**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-----------------------------------------------------------------------x

In the Matter of the Application of

MICHAEL SULLIVAN,

                        Petitioner/Plaintiff,

SUMMONS

For a Judgment Pursuant to CPLR Article 78
and for a Declaratory Judgment and other relief

Justice Assigned:
Hon.

      - against -

GEORGE HOEHMANN, Individually and as Town
Supervisor of the Town of Clarkstown, Councilman FRANK
BORELLI, Individually and as a Member of the Clarkstown
Town Board, Councilwoman STEPHANIE HAUSNER, as a
Member of the Clarkstown Town Board, Councilman JOHN
J. NOTO, Individually and as a Member of the Clarkstown
Town Board, Councilwoman ADRIENNE D. CAREY,
Individually and as a Member of the Clarkstown Town
Board, the TOWN OF CLARKSTOWN and the TOWN
BOARD OF THE TOWN OF CLARKSTOWN,

Index No.: SU-2016-001260

                    Respondents/Defendants.

-----------------------------------------------------------------------x

To the above-named defendants:

       YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or if the complaint is not served with this summons, to serve a notice of
appearance on the plaintiffs' attorney within **twenty (20)** days after the service of this summons,
exclusive of the day of service (or within thirty [30] days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded
in the complaint.

Dated: West Nyack, New York
       August 23, 2016

                                 Richard A. Glickel
                                 Attorney for Petitioner/Plaintiff
                                 2 Crosfield Avenue • Suite 103
                                 West Nyack, New York 10994
                                 ph (845) 353-4300; fx (845) 353-6221
                                 rglickel@optonline.net

*The basis of venue is:* Plaintiff & Defendants reside in Rockland County.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
------------------------------------------------------------------------X
In the Matter of the Application of

MICHAEL SULLIVAN,

                    Petitioner/Plaintiff,

                                                                        VERIFIED PETITION/COMPLAINT

For a Judgment Pursuant to CPLR Article 78
and for a Declaratory Judgment and other relief

                                                                        Justice Assigned:
          - against -                                                   Hon.

GEORGE HOEHMANN, Individually and as Town
Supervisor of the Town of Clarkstown, Councilman FRANK
BORELLI, Individually and as a Member of the Clarkstown
Town Board, Councilwoman STEPHANIE HAUSNER, as a
Member of the Clarkstown Town Board, Councilman JOHN
J. NOTO, Individually and as a Member of the Clarkstown
Town Board, Councilwoman ADRIENNE D. CAREY,
Individually and as a Member of the Clarkstown Town
Board, the TOWN OF CLARKSTOWN and the TOWN
BOARD OF THE TOWN OF CLARKSTOWN,

                                                                        Index No.:

                    Respondents/Defendants.
------------------------------------------------------------------------X

          Petitioner/plaintiff, by his attorney, Richard A. Glickel, respectfully states and alleges that:

## THE PARTIES

          1.   At all times hereinafter mentioned petitioner/plaintiff, MICHAEL SULLIVAN,

("petitioner"), was and is the duly appointed Chief of Police of the Town of Clarkstown Police

Department and resides in the Town of Clarkstown, New York.

          2.   At all times hereinafter mentioned, respondent/defendant GEORGE HOEHMANN, is

the elected Town Supervisor of the Town of Clarkstown and before his election as Supervisor,

respondent served as a member of the Clarkstown Town Board. Respondent-HOEHMANN ("HOEHMANN") was and is a resident of the Town of Clarkstown, County of Rockland, New York State. HOEHMANN is sued herein in his official and individual capacity.

3. At all times hereinafter mentioned, respondent/defendant FRANK **BORELLI**, was and is an elected member of the Clarkstown Town Board. Respondent-BORELLI ("BORELLI") is a resident of the Town of Clarkstown, County of Rockland, New York State and is sued in his official and individual capacity.

4. At all times hereinafter mentioned, respondent/defendant STEPHANIE **HAUSNER**, was and is an elected member of the Clarkstown Town Board. Respondent-HAUSNER ("HAUSNER") is a resident of the Town of Clarkstown, County of Rockland, New York State and is sued in her official capacity.

5. At all times hereinafter mentioned, respondent/defendant JOHN J. **NOTO**, was and is an elected member of the Clarkstown Town Board. Respondent-NOTO ("NOTO") is a resident of the Town of Clarkstown, County of Rockland, New York State and is sued in his official and individual capacity.

6. At all times hereinafter mentioned, respondent/defendant ADRIENNE D. **CAREY**, was and is an appointed member of the Clarkstown Town Board. Respondent-CAREY ("CAREY") is a resident of the Town of Clarkstown, County of Rockland, New York State and is sued in her official and individual capacity.

7. The supervisor and town councilpersons constitute the **TOWN BOARD** OF THE TOWN OF CLARKSTOWN which, as a body exercises all the powers and is subject to all the duties imposed by law upon town boards.

2

8.   The **TOWN OF CLARKSTOWN**, is a duly incorporated political subdivision of the State of New York, organized under and pursuant to the Constitution and the laws of the State of New York, being located within the County of Rockland and maintaining its principal offices at 10 Maple Avenue, New City, New York.

## JURISDICTION

9.   Subject matter jurisdiction over this action vests in the Supreme Court pursuant to Article VI, § 7 of the Constitution of the State of New York.

## VENUE

10.   Rockland County is the proper place of trial (CPLR § 506 [a] & [b]). Each of the individually named defendants reside in the county (CPLR § 503[a]); and the town is situated in Rockland County (CPLR § 504 [2]).

## NATURE OF THE CASE

11.   Petitioner brings this hybrid action for declaratory and injunctive relief and compensatory and punitive damages pursuant to CPLR Article 78, CPLR 3001, Public Officers Law § 100, et seq., (the "Open Meetings Law") and Civil Service Law § 75 (b) & Labor Law § 740, and respondents improper government action and violations of, inter alia, the First, Fifth and Fourteenth Amendments to the Federal Constitution, 42 U.S.C. § 1983, Penal Law §§ 195.05 and 200.00, et seq., (the "Public Trust Act").

12.   Petitioner is a career law enforcement officer. Since February 2011 through present petitioner has served as the duly appointed Chief of Police of the Clarkstown Police Department.

13. Since his election in November 2015, HOEHMANN, in concert with BORELLI and NOTO, has acted to publically humiliate and marginalize petitioner.

14. Purporting to act on behalf of, or as, a non-existent "board of police commissioners", HOEHMANN and the other respondents have attempted to limit and usurp the powers invested in petitioner as the chief executive officer of the Clarkstown Police Department.

15. Respondents' hostile actions are intended to induce petitioner's retirement.

16. Petitioner has maintained an exemplary unblemished 33-year career in law enforcement. At 53-years of age, petitioner enjoys excellent health and loves serving as the police chief for the community he grew up in, and where he has raised his own family. Petitioner hasn't considered an early retirement.

17. As a permanent civil service appointee with no intention of retiring, respondents embarked on a scheme to force petitioner's departure through charges of misconduct as justification for petitioner's dismissal under the Rockland County Police Act.

18. On July 19, 2016, respondents-HOEHMANN, BORELLI, NOTO and CAREY presented petitioner with written charges[1] alleging petitioner's misconduct and incompetence, and petitioner was notified of his suspension from duty pending the disposition of said charges.

19. The actions of the respondents leading up to and including petitioner's suspension from duty were in violation of lawful procedure, rendered without jurisdiction, and constitute retaliatory disciplinary and adverse personnel action against petitioner in reaction to petitioner's objection to and disclosure of respondents' improper government action and petitioner's exercise of his First

---

[1]    A copy of the "notice and statement of charges" dated July 20, 2016, is annexed hereto as Exhibit A.

Amendment rights.

20. The "notice and statement of charges" dated July 20, 2016, ("Notice"), establishes respondents' intent to schedule and proceed with the hearing of disciplinary charges and that such hearing would render ineffectual a declaratory judgment and/or judgment in accordance with CPLR 7806 in favor of the petitioner and that immediate irreparable injury, loss or damages has resulted and will continue to result unless the respondents/defendants are stayed and restrained from proceeding with such hearing.

21. Petitioner requires an immediate temporary stay and preliminary injunctive relief, staying and enjoining respondents from proceeding to schedule and conduct the hearing described in the Notice dated July 20, 2016, pending the Supreme Court's hearing, determination and judgment and declaration of the issues and claims presented herein.

### THE FACTS

22. The Town of Clarkstown has established and maintains a town police department in accordance with the Rockland County Police Act (L.1936, c.526).[2]

23. From its establishment, the Clarkstown Police Department has had an appointed chief of police as required by the Rockland County Police Act.

24. Pursuant to the Rockland County Police Act a town board may appoint one or three police commissioners and delegate its powers to such commission. Should the town board appoint only one commissioner, then two town board members shall be appointed to constitute a three-member police commission. A town board may also abolish its police commission and thereupon

---

[2]    A copy of the Rockland County Police Act, as amended, is annexed hereto as Exhibit B.

5

exercise the powers granted to the town board under the Rockland County Police Act.

25. From 1974 through 2004 the Town of Clarkstown did have a police commission comprised of one "citizen" police commissioner and two members of the town board. The town board abolished the Clarkstown Police Commission in April 2004. The town board has never re-established the Clarkstown Police Commission.

26. That in accordance with the Rockland County Police Act and in furtherance of the organization, government, discipline and administration of the Clarkstown Police Department, there exists a body of written general orders, rules and regulations as adopted and amended from time-to-time by the town board and the clarkstown police commission (when such commission existed).

27. That pursuant to General Order 110 of the Rules & Regulations of the Clarkstown Police Department, petitioner is the chief executive officer of the Clarkstown Police Department, subject to the rules an regulations prescribed by the police commission. See, Exhibit C.

28. As Clarkstown's Chief of Police, the government and control of the police department and its members is vested in the petitioner.

29. At the direction of the Chief of Police or his designee, any member of the Clarkstown Police Department may be investigated and examined and written disciplinary charges may be preferred against a member who shall be entitled to a full evidentiary hearing.

30. On the evening of June 28, 2016, petitioner was informed by the Town's deputy town attorney that respondents had obtained information that CPD Sergeant Stephen Cole-Hatchard ("Sgt. Cole-Hatchard") may have revealed confidential personnel-related information to an investigative reporter for the Journal-News following an e-mail exchange between that reporter and Cole-Hatchard.

31. Petitioner agreed to promptly investigate the matter and asked if respondents could identify that reporter and provide the date of the e-mail(s). Respondents would not volunteer any information to assist petitioner.

32. The following morning Sgt. Cole-Hatchard was directed to petitioner's office where he was served with the department's "Notice of Internal Investigation" and apprised of the nature of the complaint against the sergeant and that petitioner intended to formally interview him, that day, in the presence of his PBA representative and legal counsel.

33. Following the interview, petitioner let the deputy town attorney know that Sgt. Cole-Hatchard did recall an email exchange with a Journal-News reporter. The sergeant denied that any information concerning a pending personnel matter was disclosed as he (Sgt. Cole-Hatchard) would not have had any information to impart on that matter in any event.

34. On July 1, petitioner's investigation was in an early stage and obviously incomplete. That afternoon – after leaving the police station to begin his holiday weekend – petitioner received HOEHMANN's email stating that "irrespective" of whether petitioner's investigation resulted in disciplinary charges, Sgt. Cole-Hatchard was to be immediately removed from the Strategic Intelligence Unit and reassigned to the detective bureau at CPD headquarters. And the sergeant was not to be assigned any duties that would entail his contact with the press and media.[3]

35. The email demanded that petitioner confirm Sgt. Cole-Hatchard's reassignment out of the Strategic Intelligence Unit that same day. Exhibit D.

36. HOEHMANN knew that Sgt. Cole-Hatchard was on vacation in Florida that day.

---

[3] A copy of Hoehmann's memo sent to the petitioner in the afternoon of Friday, July 1, 2016, is annexed hereto as Exhibit D.

37. HOEHMANN'S directive was issued without any discussion or consultation between the petitioner and any of the respondents, either individually or as a duly constituted municipal board or commission, concerning the reassignment of CPD personnel, or without consideration of the potential adverse consequence of the abrupt removal of Sgt. Cole-Hatchard from the Strategic Intelligence Unit which he (Cole-Hatchard) helped create and manage.

38. Upon information and belief, HOEHMANN's directive constituted an adverse employment action that was punitive to a member officer of the police department and in derogation of the powers specifically invested in the chief of police by the general orders and rules adopted by the town board.

39. Upon information and belief, HOEHMANN'S directive constituted improper government action in violation of federal, state or local law, rule or regulation including, inter alia, Sgt. Cole-Hatchard's free speech and due process rights under the Federal Constitution.[4]

40. HOEHMANN'S email purported to represent a decision of the "board of police commissioners" arrived at after "separate consultation with other members of the town board".

41. No meeting of either, the town board or any "board of police commissioners" was noticed or convened. No vote of either the town board or any "board of police commissioners" was taken or recorded. No record of any such meeting(s) or any minutes thereof are on file in the Office of the Clarkstown Town Clerk as no such records exist.

42. On Sunday, July 3, 2016, petitioner attempted to communicate with the "other" town board members to confirm that the board was in accord with HOEHMANN's July 1 directive.

---

[4] A copy of Cole-Hatchard's federal complaint as filed in the Southern District on or about 7/23/2016, is annexed hereto as Exhibit H (*i.e., Stephen Cole-Hatchard v Hoehmann, et al.*, 7:16-cv-05900).

8

43. Respondents BORELLI, NOTO and CAREY answered that they agreed with HOEHMANN. Councilwoman HAUSNER did not respond.

44. On July 4th, Sgt. Cole-Hatchard reported "sick" so petitioner telephoned Sgt. Cole-Hatchard from headquarters and informed him of HOEHMANN'S directive and instructed Sgt. Cole-Hatchard to report for duty to CPD headquarters the following day. Respondents were so informed of the sergeant's reassignment.

45. Petitioner interviewed the Journal-News reporter on July 6 who told petitioner that he did not remember discussing the personnel matter with Sgt. Cole-Hatchard and petitioner renewed his request to the town board for any information the board or any individual board members had concerning Sgt. Cole-Hatchard's possible misconduct in furtherance of the completion of petitioner's investigation. Exhibit E.

46. The board refused petitioner's request citing their role in rendering a final determination upon a possible disciplinary hearing as justification. Respondents were actually concealing the fact that HOEHMANN's staff had entered the CPD computers and reviewed the police department's emails. HOEHMANN's clandestine incursion into the police department's computers was known to the respondents who had already accessed the email exchange between the reporter and Sgt. Cole-Hatchard.

47. On July 11, 2016, petitioner requested "IT" assistance in obtaining emails from and to Sgt. Cole-Hatchard as well as a list of incoming and outgoing telephone calls.

48. On July 13, petitioner located the email exchange between the Journal-News reporter and Sgt. Cole-Hatchard.

49. The emails, dated March 16, 27 & 28, 2016, addressed the town board's rumored

9

anticipated settlement with a former Clarkstown police officer who was, reportedly, the primary

financier of HOEHMANN'S successful campaign for town supervisor during the Fall of 2015, and

HOEHMANN's selection of "an Astorino guy", to serve as the police expert for an efficiency study

of the Clarkstown Police Department.

50. The exchanged opinions – unrelated to Sgt Cole-Hatchard's police duties – raised a

suspected lack of transparency regarding the anticipated settlement with the former police officer and

the Republican Chairman's influence on HOEHMANN. Nothing of a confidential nature was

discussed or revealed in the emails.

51. Petitioner's investigation was unfinished; at that point, there was no evidence of Sgt.

Cole-Hatchard's misconduct. On July 14, he sought to obtain through the town's "IT" administrator

additional emails from or to Sgt. Cole-Hatchard from January 1 through March 27, 2016.

52. On July 19, 2016, petitioner was summoned to HOEHMANN's office at 7:30 that

evening – ostensibly to discuss the "status" of petitioner's investigation of the Cole-Hatchard matter.

53. There was no status conference. Instead, and in the presence of HOEHMANN,

BORELLI, NOTO and CAREY, the town attorney and deputy town attorney and HOEHMANN's

chief of staff, petitioner was handed two documents.

54. The first was a "settlement agreement and general release", the terms of which would

allow petitioner to remain on payroll, with benefits, etc., through December 31, 2016, in exchange

for petitioner's tender of his irrevocable letter of resignation – and his silence – petitioner could

retire, in "good standing", at year's end. Exhibit F.

55. The second document was a notice and statement of charges. Exhibit A.

56. Petitioner was given until 3 p.m. the following afternoon to either accept the proffered

settlement or face the disciplinary charges specified in the notice and statement of charges and his immediate suspension from duty.

57. Following their meeting with petitioner, the respondents – minus HAUSNER who was absent – proceeded to convene a regularly scheduled meeting of the town board.

58. Petitioner declined the "settlement" on July 20 and was suspended from duty that afternoon.

59. Literally within minutes of petitioner's suspension HOEHMANN had forwarded an email to the entire police department informing the officers of petitioner's suspension. Petitioner's computer and cell phone service were terminated and his access to headquarters denied. Petitioner was not allowed the opportunity to explain his status to the men and women serving under his command.

60. The next day HOEHMANN'S office publically announced that "following a unanimous decision by the Town Board, Chief Michael Sullivan has been suspended". Exhibit G.[5]

61. Town board member HAUSNER disavowed the board's action asserting that she "did not participate in any vote and had told the town attorney and the supervisor that [she] was not prepared to vote on the suspension of the police chief without seeing any formal charges". Exhibit G.

62. No vote was taken or recorded reflecting either the preferring of formal charges against the petitioner or of his suspension from duty. There are no minutes of the town board's actions memorializing the preferring of charges and petitioner's suspension from duty. That no record of any

---

[5]     Exhibit G is an "on-line" (lohud.com) version of a Journal-News story reporting the statements quoted in ¶¶ 60 & 61 above.

11

such meeting(s) or any minutes thereof are on file in the Office of the Town Clerk of the Town of Clarkstown and no such record exist.

## FOR A FIRST CAUSE OF ACTION
### (Open Meetings Law)

63. Petitioner repeats all of the allegations contained in paragraphs "1" through "62" of the verified petition with the same force and effect as if at length set forth in this paragraph "63".

64. By conducting the business of a public body on or about July 1, 2016 – either as a town board or as a "board of police commissioners" – without convening such body and without record of such business, respondents acted in violation of the provisions of the Open Meetings Law and failed collectively as a body and as public officers to perform a duty required by law.

65. That as a result of such business, petitioner was caused to enforce punitive and adverse employment action against a member of the Clarkstown Police Department serving under his command.

66. That any and all such action(s) taken in relation to respondents' violation of the Open Meetings Law are void.

## FOR A SECOND CAUSE OF ACTION
### (Open Meetings Law)

67. Petitioner repeats all of the allegations contained in paragraphs "1" through "66" of the verified petition with the same force and effect as if at length set forth in this paragraph "67".

68. By conducting the business of a public body on or about July 1, 2016 – either as a town board or as a "board of police commissioners – without convening such body and without record of such business, respondents acted in violation of the provisions of the Open Meetings Law and failed

collectively as a body and as public officers to perform a duty required by law.

69. That as a result of such business, petitioner has been suspended and prevented from the performance of his duties as the duly appointed Chief of Police of the Clarkstown Police Department.

70. That petitioner's suspension and any and all other action(s) taken in relation to respondents' violation of the Open Meetings Law are void.

### FOR A THIRD CAUSE OF ACTION
### (Open Meetings Law)

71. Petitioner repeats all of the allegations contained in paragraphs "1" through "62" of the verified petition with the same force and effect as if at length set forth in this paragraph "71".

72. By conducting the business of a public body on or about July 19, 2016 – either as a town board or as a "board of police commissioners – without convening such body and without record of such business, respondents acted in violation of the provisions of the Open Meetings Law and failed collectively as a body and as public officers to perform a duty required by law.

73. That as a result of such business, petitioner has been suspended and prevented from the performance of his duties as the duly appointed Chief of Police of the Clarkstown Police Department.

74. That petitioner's suspension and any and all other action(s) taken in relation to respondents' violation of the Open Meetings Law are void.

### FOR A FOURTH CAUSE OF ACTION
### (CPLR § 7803 [2])

75. Petitioner repeats all of the allegations contained in paragraphs "1" through "62" of the

13

verified petition with the same force and effect as if at length set forth in this paragraph "75".

76. In 2004 the Clarkstown Town Board did by resolution abolish the Clarkstown Police Commission in accordance with the Rockland County Police Act, § 2 (B).

77. That since the dissolution of the Clarkstown Police Commission, no police commissioner or commissioners have ever been appointed and no board of police commissioners re-established by the town board in accordance with the Rockland County Police Act.

78. That any of respondents' actions purportedly taken as, or on behalf of, the "board of police commissioners" of the Town of Clarkstown, or as a "police commissioner" of the Town of Clarkstown, were without jurisdiction and void.

FOR A FIFTH CAUSE OF ACTION
(CPLR § 7803 [2])

79. Petitioner repeats all of the allegations contained in paragraphs "1" through "62" of the verified petition with the same force and effect as if at length set forth in this paragraph "79".

80. That the investigation of alleged improper conduct and the examination of members of the Clarkstown Police Department is vested in the Chief of Police or the Chief's designee.

81. That in accordance with the Rockland County Police Act and the rules and regulations for police disciplinary procedure adopted by the town board, the town board is deemed to have knowledge of a member's alleged improper conduct upon completion of the Department's investigation "and not before".

82. By directing the removal of a member of the Clarkstown Police Department serving under petitioner's command from the Strategic Intelligence Unit prior to the completion of the Department's investigation of the member's alleged improper conduct respondents proceeded

14

collectively as a body and as public officers in excess of jurisdiction.

83. That all of respondents' actions taken in excess of jurisdiction are void.

FOR A SIXTH CAUSE OF ACTION
(CPLR § 7803 [3])

84. Petitioner repeats all of the allegations contained in paragraphs "1" through "62" and "79" through "82" of the verified petition with the same force and effect as if at length set forth in this paragraph "84".

85. That the investigation of alleged improper conduct and the examination of members of the Clarkstown Police Department is vested in the Chief of Police or the Chief's designee.

86. That in accordance with the Rockland County Police Act and the rules and regulations for police disciplinary procedure adopted by the town board, the town board is deemed to have knowledge of a member's alleged improper conduct upon completion of the Department's investigation "and not before".

87. By directing the removal of a member of the Clarkstown Police Department serving under petitioner's command from the Strategic Intelligence Unit prior to the completion of the Department's investigation of the member's alleged improper conduct respondents proceeded collectively as a body and as public officers in violation of lawful procedure.

88. That all of respondents' actions taken in violation of lawful procedure are void.

FOR A SEVENTH CAUSE OF ACTION
(CPLR § 7803 [3])

89. Petitioner repeats all of the allegations contained in paragraphs "1" through "62" and "79" through "87" of the verified petition with the same force and effect as if at length set forth in

15

this paragraph "89".

90. That the investigation of alleged improper conduct and the examination of members of the Clarkstown Police Department is vested in the Chief of Police or the Chief's designee.

91. That in accordance with the Rockland County Police Act and the rules and regulations for police disciplinary procedure adopted by the town board, the town board is deemed to have knowledge of a member's alleged improper conduct upon completion of the Department's investigation "and not before".

92. By directing the removal of a member of the Clarkstown Police Department serving under petitioner's command from the Strategic Intelligence Unit prior to the completion of the Department's investigation of the member's alleged improper conduct respondents' directive was arbitrary and capricious.

93. That the respondents' decision to remove and reassign Sgt. Cole-Hatchard was arbitrary and capricious and an abuse of discretion.

FOR AN EIGHTH CAUSE OF ACTION
(Retaliatory personnel action by public employer)

94. Petitioner repeats all of the allegations contained in paragraphs "1" through "66" and "79" through "93" of the verified petition with the same force and effect as if at length set forth in this paragraph "94".

95. By directing the removal of a member of the Clarkstown Police Department serving under petitioner's command from the Strategic Intelligence Unit prior to the completion of the Department's investigation of the member's alleged improper conduct, respondents acted in violation of federal law including the First, Fifth and Fourteenth Amendments to the Federal

Constitution and the Department's rules and regulations.

96. That respondents' actions were in violation of federal law and local rule or regulation and constitute improper government action as defined by Civil Service Law § 75-b and Labor Law § 740.

97. Respondents creation and preferring of disciplinary charges against the petitioner and petitioner's suspension from duty, based on petitioner's objection to respondents' actions that were in violation of law, constitute retaliatory personnel action against the petitioner.

98. That for his entire 33-year career as a law enforcement officer petitioner has maintained an exemplary unblemished personnel record.

99. As a result of respondents' retaliatory action, petitioner has been caused to suffer embarrassment, personal humiliation, mental anguish and to sustain actual damages.

100. Petitioner is entitled to recover compensatory damages, reasonable costs, expenses and attorneys fees.

FOR A NINTH CAUSE OF ACTION
(Retaliatory personnel action by employer)

101. Petitioner repeats all of the allegations contained in paragraphs "1" through "62" and "94" through "100" of the verified petition with the same force and effect as if at length set forth in this paragraph "101".

102. By directing the removal of a member of the Clarkstown Police Department serving under petitioner's command from the Strategic Intelligence Unit prior to the completion of the Department's investigation of the member's alleged improper conduct, respondents acted in violation of the Department's rules and regulations which violation created a substantial and specific

17

danger to police and public safety.

103. That respondents' actions were in violation of local rule or regulation and constitute improper government action as defined by Civil Service Law § 75-b and Labor Law § 740.

104. Respondents creation and preferring of disciplinary charges against the petitioner and petitioner's suspension from duty, based on petitioner's objection to respondents' actions that were in violation of law and which created a substantial and specific risk to public safety, constitute retaliatory personnel action against the petitioner.

105. That for his entire 33-year career as a law enforcement officer petitioner has maintained an exemplary unblemished personnel record.

106. As a result of respondents' retaliatory action, petitioner has been caused to suffer embarrassment, personal humiliation, mental anguish and to sustain actual damages.

107. Petitioner is entitled to recover compensatory damages, reasonable costs, expenses and attorneys fees.

FOR A TENTH CAUSE OF ACTION
("Whistle Blower Law")

108. Petitioner repeats all of the allegations contained in paragraphs "1" through "62" of the verified petition with the same force and effect as if at length set forth in this paragraph "108".

109. In January 2016, petitioner met with Rockland County District Attorney Thomas P. Zugibe and reported petitioner's concern that a former member of the Clarkstown Police Department who was the principal benefactor of HOEHMANN's successful campaign for town supervisor was using his influence with HOEHMANN, BORELLI and NOTO, to get reinstated to the police department in order to obtain a pension and medical benefits and to exact his revenge upon those

18

who were responsible for his separation from the police department.

110. The basis for petitioner's meeting with the District Attorney was petitioner's reasonable belief that HOEHMANN and the former police officer had colluded to violate one or more provisions of N.Y. Penal Law § 200.00, et seq., (the "Public Trust Act").

111. Petitioner reasonably believed this information to be true based on HOEHMANN's expressed interest in pursuing a settlement with the former police officer and HOEHMANN's and BORELLI'S demonstrated hostility towards petitioner after the 2015 election.

112. Following petitioner's meeting with District Attorney Zugibe, the District Attorney spoke with HOEHMANN and related to HOEHMANN the sum and substance of petitioner's belief that there existed potential or actual criminal conduct arising from HOEHMANN's political campaign.

113. Respondents creation and preferring of disciplinary charges against the petitioner and petitioner's suspension from duty, are retaliatory personnel action against the petitioner for his disclosure to the District Attorney of information which petitioner reasonably believes constitutes improper governmental action.

114. That for his entire 33-year career as a law enforcement officer petitioner has maintained an exemplary unblemished personnel record.

115. As a result of respondents' retaliatory action, petitioner has been caused to suffer embarrassment, personal humiliation, mental anguish and to sustain actual damages.

116. Petitioner is entitled to recover compensatory damages, reasonable costs and expenses and attorney's fees.

117. Respondents actions constitute oppressive intentional conduct, undertaken with

19

malicious and vindictive purpose and evince a high degree of moral turpitude, dishonesty and indifference to the obligations of elective office.

118.    Petitioner is entitled to recover punitive damages.

## FOR AN ELEVENTH CAUSE OF ACTION
### ("Whistle Blower Law")

119.    Petitioner repeats all of the allegations contained in paragraphs "1" through "62" and "108" through "117" of the verified petition with the same force and effect as if at length set forth in this paragraph "119".

120.    That sometime following petitioner's meeting with District Attorney Zugibe during which petitioner had reported his concerns of one or more violations of N.Y. Penal Law § 200.00, et seq., and the District Attorney's subsequent conversation with HOEHMANN about petitioner's concerns, petitioner's computer accessed by one or more unauthorized external intruders.

121.    Petitioner reported this security breach to CPD's computer and technology officer and an investigation was begun by that officer and members of the CPD detective bureau.

122.    Upon information and belief the unauthorized entry into the CPD computers was directed by HOEHMANN.

123.    The unauthorized entry into the CPD computers was reported to the Rockland County District Attorney's office.

124.    That as a result of the reported security breach other law enforcement agencies that regularly exchange important information with CPD have ceased electronic communications with the Clarkstown Police Department.

125.    That the unauthorized entry into the CPD computer systems has resulted in the

obstruction of governmental administration and a violation of N.Y. Penal Law § 195.05.

126.    That the unauthorized entry into the CPD computer system has created and presents a substantial and specific danger to police security and public safety.

127.    That HOEHMANN's actions constitute improper governmental action.

128.    Respondents creation and preferring of disciplinary charges against the petitioner and petitioner's suspension from duty, are retaliatory personnel action against the petitioner for his disclosure to the District Attorney of information which petitioner reasonably believes constitutes improper governmental action.

129.    That for his entire 33-year career as a law enforcement officer petitioner has maintained an exemplary unblemished personnel record.

130.    As a result of respondents' retaliatory action, petitioner has been caused to suffer embarrassment, personal humiliation, mental anguish and to sustain actual damages.

131.    Petitioner is entitled to recover compensatory damages, reasonable costs and expenses and attorney's fees.

132.    Respondents actions constitute oppressive intentional conduct, undertaken with malicious and vindictive purpose and evince a high degree of moral turpitude, wanton dishonesty and a criminal indifference to the public's safety and welfare.

133.    Petitioner is entitled to recover punitive damages.

FOR A TWELFTH CAUSE OF ACTION
(42 U.S.C. § 1983)

134.    Petitioner repeats all of the allegations contained in paragraphs "1" through "62" of the verified petition with the same force and effect as if at length set forth in this paragraph "134".

21

135.     On June 16, 2016, the Journal-News published a story about a lawsuit against the town over the amount of statutory benefits owed to a retired police officer.

136.     In that newspaper article HOEHMANN's chief of staff was quoted as blaming the actions of the Town's prior administration for presently costing the taxpayers hundreds of thousands of dollars.

137.     The statements by HOEHMANN's chief of staff were misleading and potentially prejudicial to the town's position in pending litigation.

138.     The article was republished on social media and drew numerous negative posts by concerned citizens about the town's handling of the case.

139.     Petitioner posted to the "blog" his (petitioner's) response in defense of the town's actions.

140.     The negative posts stopped after petitioner's explanation was published on the social media site.

141.     Petitioner had joined the public discourse on a matter of public interest and concern. Petitioner's statement served to correct the inaccurate and prejudicial public statements attributed to HOEHMANN"'s office.

142.     Petitioner's public comments constituted protected speech under the First Amendment to the Federal Constitution.

143.     That respondents, and each of them knew, or should reasonably have known, that petitioner's public comments on a matter of public interest and public discourse constituted protected speech under the First Amendment to the Federal Constitution.

144.     Acting under color of state law, respondents' creation and preferring of disciplinary

22

charges against the petitioner and petitioner's suspension from duty, was in retaliation for and causally connected to the exercise of petitioner's First Amendment rights.

145.   Petitioner is entitled to recover compensatory damages, reasonable costs and expenses and his attorney's fees in this action.

146.   Respondents' actions constitute oppressive intentional conduct, undertaken with malicious and vindictive purpose and evincing indifference for the deprivation of petitioner's rights, privileges and immunities secured by the Federal Constitution.

147.   Petitioner is entitled to recover punitive damages.

WHEREFORE, petitioner respectfully demands an order and judgment as follows:

A.   Granting judgment for the petitioner pursuant to CPLR Article 78 and CPLR 3001, declaring that by conducting business of the town board, or the "board of police commissioners" on or about July 1, 2016 and on July 19, 2016, respondents acted in violation of the Open Meetings Law; and

B.   Declaring that petitioner's suspension from duty and all actions taken in relation to respondents violations of the Open Meetings Law, including, inter alia, all adverse personnel actions, are null and void pursuant to Public Officers Law § 107 (1); and

C.   Permanently restraining and enjoining respondents from proceeding with any disciplinary hearing or other adverse personnel action against the petitioner arising from or in relation to respondents' violation of the Open Meetings Law;

D.   Ordering and directing the respondents, pursuant to Public Officers Law § 107 (1), to participate in a training session conducted by the staff of the New York State Committee on Open

23

Government concerning the obligations imposed on members of a public body by the Public Officers Law § 100, et seq.;

E. Declaring that, as Chief of Police, the petitioner is the chief executive officer of the Clarkstown Police Department and further Declaring that the government and control of the Clarkstown Police Department and its members is vested in the petitioner as Chief of Police;

F. Declaring that no "board of police commissioners" exists in the Town of Clarkstown in pursuant to and in accordance with Rockland County Police Act (L.1936,c.526), and that all actions taken "on behalf of the board of police commissioners" are without jurisdiction and null and void;

G. Permanently restraining and enjoining respondents from conducting any business or enforcing any orders or resolutions or any actions arising from or as "the board of police commissioners" including, inter alia, proceeding with any disciplinary hearing or other adverse personnel action against the petitioner;

H. Adjudging that respondents' direction for the removal of a member of the Clarkstown Police Department serving under petitioner's command from the Strategic Intelligence Unit prior to the completion of the Department's investigation of the member's alleged improper conduct was arbitrary and capricious, in violation of lawful procedure and an abuse of discretion;

I. Adjudging and Declaring that petitioner's suspension and the preferring of charges based upon petitioner's objection to respondents' actions that were in violation of federal law and local rule or regulation is retaliatory personnel action against the petitioner and restraining and enjoining respondents continued violation of Civil Service Law § 75 (b) & Labor Law § 740, further voiding and setting aside petitioner's suspension from duty;

J. Permanently restraining and enjoining respondents from proceeding with any

24

disciplinary hearing or other adverse personnel action against the petitioner arising from or in relation to respondents' violation of federal law and local rule;

K. Adjudging and Declaring that petitioner's suspension and the preferring of charges based upon petitioner's objections to respondents' actions that were in violation of law or local rule or regulation and which created a substantial and specific risk to public safety is retaliatory personnel action against the petitioner and restraining and enjoining respondents continued violation of Civil Service Law § 75 (b) & Labor Law § 740, and further voiding and setting aside petitioner's suspension from duty;

L. Adjudging and Declaring that petitioner's suspension and the preferring of charges based upon petitioner's disclosure to the District Attorney of information petitioner reasonably believes constitutes improper government action is retaliatory personnel action against the petitioner and restraining and enjoining respondents continued violation of Civil Service Law § 75 (b) & Labor Law § 740, and declaring void and setting aside petitioner's suspension from duty;

M. Adjudging and Declaring that petitioner's suspension from duty and preferring of charges based on petitioner's protected speech was in retaliation for and causally connected to the exercise of petitioner's First Amendment rights and restraining and enjoining respondents continued violation of petitioner's First Amendment rights, and declaring void and setting aside petitioner's suspension from duty;

N. Permanently enjoining respondents from proceeding with any adverse personnel action against the petitioner including, inter alia, scheduling, conducting or otherwise proceeding with the hearing referenced in the notice and statement of charges dated July 20, 2016, or any amendment or supplements thereto;

O. Awarding petitioner compensatory and exemplary damages, reasonable costs and expenses and attorney's fees pursuant to Public Officers Law § 107 (2), Civil Service Law 75 (b) & Labor Law § 740 (5) and 42 U.S.C. §§ 1983 & 1988; and

P. Granting petitioner/plaintiff Michael Sullivan such other and further relief as the Court deems just, proper and equitable.

Dated: West Nyack, New York
      August 18, 2016

Yours, *etc.,*

Richard A. Glickel
Attorney for Petitioner/Plaintiff
2 Crosfield Avenue • Suite 103
West Nyack, New York 10994
(845) 353-4300; fx (845) 353-6221
rglickel@optonline.net

State of New York   )
County of Rockland  )ss.:

      Michael Sullivan, being duly sworn states that he is the petitioner/plaintiff herein and he has read the annexed petition/complaint, knows the contents thereof and the same are true to his knowledge, except to those matters therein which are stated to be alleged upon information and belief, and as to those matters, deponent believes them to be true.

                                      Michael Sullivan

Sworn to before me this
18th day of August, 2016.

RICHARD A. GLICKEL
Notary Public, State of New York
No. 02GL4606827
Qualified in Rockland County
Commission Expires _____ 20__

27