Exhibit A

July 20, 2016

Police Chief Michael Sullivan
20 Maple Avenue
New City, New York 10956

RE:    NOTICE AND STATEMENT OF CHARGES

Chief Sullivan:

    This is to inform you that in accordance with applicable provisions of law the following charges are preferred against you:

## CHARGE I – MISCONDUCT
### Specification 1
### Disobedience Of An Order

    On or about July 1, 2016 you were instructed by the Town Supervisor, who was acting on behalf of the Board of Police Commissioners, to immediately reassign a police sergeant to a different post and confirm that the reassignment had been completed on that day. On or about July 3, 2016, you contacted one or more members of the Town Board and stated in words or substance that the reassignment had not been completed and sought their confirmation of the Supervisor's directive. Your actions constitute disobedience of an order in violation of General Order 130, Article III, A(3). This is misconduct.

## CHARGE I – MISCONDUCT
### Specification 2
### Disobedience Of An Order

    On or about June 20, 2016, the Town Supervisor directed you to refrain from commenting in any forum on any matter involving the Town on any litigation involving the Police Department without clearing your comments with the Town attorney. Notwithstanding that directive, on or about July 3, 2016, you contacted one or more members of the Town Board and stated in words or substance that the reassignment of a certain police sergeant had not been completed, and you sought their confirmation of the Supervisor's directive of July 1, 2016 that you immediately reassign the police sergeant to a different post and confirm that the

1

reassignment had been completed on that day. The subject of your communication related to a litigation and/or contemplated litigation involving the Police Department. You did not clear your comments with the Town Attorney before contacting the member(s) of the Town Board. Your conduct in contacting one or more members of the Town Board directly without first clearing your comments with the Town Attorney constitutes disobedience of an order in violation of General Order 130, Article III, A(3). This is misconduct.

## CHARGE II – MISCONDUCT
### Specification 1
### Insubordination

On or about July 1, 2016 you were instructed by the Town Supervisor, who was acting on behalf of the Board of Police Commissioners, to immediately reassign a police sergeant to a different post and confirm that the reassignment had been completed on that day. On or about July 3, 2016, you contacted one or more members of the Town Board and stated in words or substance that the reassignment had not been completed and sought their confirmation of the Supervisor's directive. Your actions constitute insubordination in violation of General Order 130, Article III, A(4). This is misconduct.

## CHARGE II – MISCONDUCT
### Specification 2
### Insubordination

On or about June 20, 2016, the Town Supervisor directed you to refrain from commenting in any forum on any matter involving the Town on any litigation involving the Police Department without clearing your comments with the Town attorney. Notwithstanding that directive, on or about July 3, 2016, you contacted one or more members of the Town Board and stated in words or substance that the reassignment of a certain police sergeant had not been completed, and you sought their confirmation of the Supervisor's directive of July 1, 2016 that you immediately reassign the police sergeant to a different post and confirm that the reassignment had been completed on that day. The subject of your communication related to a litigation and/or contemplated litigation involving the Police Department. You did not clear your comments with the Town Attorney before contacting the member(s) of the Town Board. Your conduct in contacting one or more members of the Town Board directly without first clearing your comments with the Town Attorney constitutes insubordination in violation of General Order 130, Article III, A(4). This is misconduct.

## CHARGE III – MISCONDUCT
### Specification 1
### Failure To Perform A Duty

As the Chief of Police of the Town of Clarkstown you are responsible for carrying out the directives of the Town of Clarkstown Board of Police Commissioners. On or about July 1, 2016 you were instructed by the Town Supervisor, who was acting on behalf of the Board of Police Commissioners, to immediately reassign a police sergeant to a different post and confirm that the reassignment had been completed on that day. On or about July 3, 2016, you contacted one or

more members of the Town Board and stated in words or substance that the reassignment had not been completed and sought their confirmation of the Supervisor's directive. Your actions constitute failure to perform a duty in violation of General Order 130, Article III, A(2). This is misconduct.

### CHARGE IV – MISCONDUCT
#### Specification 1
#### Improper Contact With Members Of The Police Commission

On or about July 1, 2016 you were instructed by the Town Supervisor, who was acting on behalf of the Board of Police Commissioners, to immediately reassign a police sergeant to a different post and confirm that the reassignment had been completed on that day. On or about July 3, 2016, you contacted one or more members of the Town Board and stated in words or substance that the reassignment had not been completed and sought their confirmation of the Supervisor's directive. Your actions constitute improper contact with members of the Police Commission in violation of General Order 130, Article III, A(71). This is misconduct.

### CHARGE V – MISCONDUCT
#### Specification 1
#### Conduct Which Brings Discredit Upon The Police Department

On about June 18, 2016 you made written comments regarding a legal proceeding or proceedings involving a former member of the Clarkstown Police Department, Police Officer Robert Lynn, against the Town of Clarkstown and others, and you publicized your comments to one or more other people by posting them on social media and/or by other electronic means. Your comments related to a matter which is and has been the subject of litigation, and/or included information of a privileged or confidential nature, information which was the subject of discussions between you and the Town Board in executive session, and/or information which was included in Town and Police Department documents pertaining to the litigation. Your conduct in commenting on pending litigation involving the Town may be prejudicial to the Town's interests in the litigation about which you commented and in other litigations. Your conduct in posting comments about this pending litigation matter on social media and/or by other means on or about June 18, 2016 constitutes conduct which brings discredit upon the Police Department, in violation of General Order 130, Article III, A(1). This is misconduct.

### CHARGE VI – MISCONDUCT
#### Specification 1
#### Disseminating Or Releasing Information Contained In A Department Record

On about June 18, 2016 you made written comments regarding a legal proceeding or proceedings involving a former member of the Clarkstown Police Department, Police Officer Robert Lynn, against the Town of Clarkstown and others, and you publicized your comments to one or more other people by posting them on social media and/or by other electronic means. Your comments related to a matter which is and has been the subject of litigation, and/or included information of a privileged or confidential nature, information which was the subject of discussions between you and the Town Board in executive session, and/or information which

was included in Town and Police Department documents pertaining to the litigation. Your conduct in commenting on pending litigation involving the Town may be prejudicial to the Town's interests in the litigation about which you commented and in other litigations. Your conduct in posting comments about this pending litigation matter on social media and/or by other means on or about June 18, 2016, including but not limited to information contained in Town and Police Department documents pertaining to the litigation, constitutes disseminating or releasing information contained in a departmental record, in violation of General Order 130, Article III, A(27). This is misconduct.

## CHARGE VII – INCOMPETENCE
### Specification 1
### Engaging In Incompetent Conduct

On about June 18, 2016 you made written comments regarding a legal proceeding or proceedings involving a former member of the Clarkstown Police Department, Police Officer Robert Lynn, against the Town of Clarkstown and others, and you publicized your comments to one or more other people by posting them on social media and/or by other electronic means. Your comments related to a matter which is and has been the subject of litigation, and/or included information of a privileged or confidential nature, information which was the subject of discussions between you and the Town Board in executive session, and/or information which was included in Town and Police Department documents pertaining to the litigation. Your conduct in commenting on pending litigation involving the Town may be prejudicial to the Town's interests in the litigation about which you commented and in other litigations. Your conduct in posting comments about this pending litigation matter on social media and/or by other means on or about June 18, 2016 constitutes incompetence or inefficiency in the performance of duty, in violation of General Order 130, Article III, A(60), and/or an exercise of poor judgment. This is incompetence.

You may submit an answer to this notice of charges within eight (8) days of service of this document upon you; any such answer is to be filed with the undersigned within the aforementioned period.

You are entitled to a hearing on the above charge and any amendments thereto and to be represented at such hearing by an attorney. You should be prepared at such hearing to present such witnesses and other proof as you may have in your defense against this charge. The date and time of such hearing will be forwarded to you under separate cover.

If you are found guilty of any of the above charges you may be subject to penalty or punishment in accordance with applicable law, which may consist of reprimand, forfeiture or withholding of salary or compensation for a period not to exceed twenty days, by suspension without pay not to exceed twenty days, or dismissal from the Department.

You are hereby suspended, with pay, pending the disposition of these charges. You are not to return to duty or exercise any police powers until further notice.

4

All further notices and communications addressed to you in connection with this charge will be mailed to you at the most recent address on file with the Personnel Department, unless you request, in writing, that the same be sent to you at a different address.

George Hoehmann
Town Supervisor

Exhibit B

## ROCKLAND COUNTY POLICE ACT

## AS AMENDED FOR TOWN POLICE DEPARTMENTS

## CHAPTER 526

AN ACT providing for the establishment, organization and operation of police departments in town of the first class in Rockland County.

Became a law May 11, 1936, with the approval of the Governor.
Passed, three-fifths being present.

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

Section 1. Establishment, organization and operation of police departments in towns of the first class in the County of Rockland. Notwithstanding any other provisions of law, the establishment, organization and operation and all matters concerning police or police departments in all towns of the first class in the County of Rockland shall be governed by the provisions of this act. The employment of such policemen and special policemen shall continue to be in accordance with the rules of the state civil service commission as heretofore extended to the employment of policemen in such towns of Rockland County.

Section 2. A. Establishment of town police departments. The town board of any town of the first class in Rockland County which now has a police force or police department, or employs police officers or policemen or which hereafter employs such policemen or police officers, shall establish a police department and appoint a chief of police, and such captains, lieutenants, sergeants and patrolmen as may be needed and fix their compensation, except that it shall not be mandatory for a town which employs special policemen only for temporary periods of time in accordance with this act to establish a police department. The compensation of such policemen shall be a town charge, except that the town board of such town may enter into an agreement with any village within it or partially within it which maintains a police department of four or more policemen on an annual full-time basis, established and maintained under the rules of civil service, and determine therein what part of the cost thereof shall be assessed against the property in the village and what part thereof shall be assessed against the property in the town outside of the village. Thereafter such portion of the cost thereof determined to be assessed outside of the village shall be a charge against that part of the town outside of any such village and assessed, levied and collected from the taxable property of that part of the town outside of the village. The town board may, at its option, determine that the town shall pay all or part of the cost of the uniforms and necessary equipment of its policemen. When appointed, such policemen shall be peace officers and shall have all the powers and be subject to all the duties and liabilities of a constable of such town in all criminal actions and proceedings and special proceedings of a criminal nature.

Town policemen who were serving as such in all towns of the first class in the County of Rockland on May sixteenth, nineteen hundred thirty-five or who have been appointed to permanent positions pursuant to law since such date, and who are lawfully entitled to continue in such positions at the time this act takes effect, shall continue to be members of the town police department without further civil service examination regardless of their age and shall retain their present lawful rank. All appointments made hereafter to any such police department shall be made in accordance with the provisions of section three of this act.

B. The town board of a town in which such a police department has been established at any time by resolution may establish a board of police commissioners for such town and appoint one or three police commissioners who shall at the time of their appointment and throughout their term of office be owners of record of real property in and electors of such town, and who shall serve without compensation, and at the pleasure of the town board. If the town board shall appoint only one such police commissioner, it shall in addition designate two members of the town board to serve as members of such police commission. When either of such boards of police commissioners shall have been established, such board of police commissioners shall have and exercise all the powers relative to police matters conferred upon the town board pursuant to this article. The town board may by resolution at any time abolish such police commission and thereupon the town board only shall exercise the powers conferred upon it by this article.

Section 3. Qualifications. No person shall be eligible to appointment or reappointment to such police department, nor continue as a member thereof, who shall not be a citizen of the United States, who has been convicted of a felony, who shall be unable to read and write understandingly the English language or who shall not have resided within the State of New York one year and in any town or village in Rockland County for six months next preceding his appointment. No person shall be appointed a member of such police force who is over the age of thirty-five years; provided, however, that a person who is serving as a town policeman who is over the age of thirty-five years and who possesses the above qualifications shall be eligible for appointment in such department, at the time of its organization only. No person shall be appointed a member of such police force unless he shall have passed an examination, held by the state civil service department, and unless at the time of his appointment his name shall be on the eligible list of the state civil service department.

Section 4. Promotion. Promotion of officers and members of such police department shall be made, and all vacancies above the grade of patrolmen filled whenever possible by promotion from among persons holding positions in a lower grade in the department in which the vacancy exists, by the town board on the basis of seniority, meritorious police service and superior capacity as shown by competitive examination, such examination to be conducted by the state civil service department. Individual acts of personal bravery may be treated as an element of meritorious service in such examination. The town board shall keep a complete service record of each member of such police department in accordance with the rules and regulations of the state civil service department and shall transmit the record of each candidate for promotion to the state civil service department in advance of such examination. Notwithstanding any other special or general laws to the contrary, such promotion examination shall be competitive examinations held by the state civil service commission regardless of the number of candidates eligible for such promotion, and if the number of candidates is restricted to less than four by the action of the town board, and if the names of one or more candidates are certified as having passed such examination, such name or names shall constitute an eligible list under the civil service law. In no case shall the requirements for service for the respective offices be for longer periods than the following periods of time:  for the office of chief, one year as captain or two years as lieutenant or three years as sergeant or ten

years as patrolman; for the office of captain, one year as lieutenant or two years as sergeant or seven years as patrolman; for the office of lieutenant, one year as sergeant or five years as patrolman; for the office of sergeant, three years as patrolman. No person shall be eligible to take such promotion examination unless he is serving as a policeman on the police force of a town or village in Rockland County. (as amended 1941, 1963)

Section 5. Transfers. Transfers from one town police department to another town or village police department in the county may be made upon the mutual consent of the appointing officers of the departments affected. Any member of such police force who is or has been transferred shall receive credit with the town department to which he is transferred for time served on the police force or in the department of any village or town within the county, as though the full time had been served with the department to which he has been transferred, for purposes of seniority, promotion, pensions and general administration.

Section 6. Administration. The town board may make, adopt and enforce rules, order and regulations for the government, discipline, administration and disposition of the police department and of the members thereof. Such rules and regulations and all amendments thereto shall be in writing and shall be posted in a conspicuous place in the police headquarters. Each member of the department shall receive a copy thereof and of all amendments thereto.

Section 7. Discipline and charges. Except as otherwise provided by law, a member of such police department shall continue in office unless suspended or dismissed in the manner hereinafter provided. The town board shall have the power and authority to adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member or members of such police department. Except as otherwise provided by law, no member or members of such police department shall be fined, reprimanded, removed or dismissed until written charges shall have been examined, heard and investigated in such manner or by such procedure, practice, examination and investigation as the board, by rules and regulations from time to time, may prescribe. Such charges shall not be brought more than sixty days after the time when the facts upon which such charges are based are known to the town board. Any member of such police department at the time of the hearing or trial of such charges shall have the right to a public hearing and trial and to be represented by counsel; no person who shall have preferred such charges or any part of the same shall sit as judge upon such hearing or trial. Witnesses upon the trial of such charges shall testify thereto under oath. No member of such department who shall have been dismissed shall be reinstated unless he shall, within twelve months of his dismissal, file with such board a written application for a rehearing of the charges upon which he was dismissed. Such board shall have the power to rehear such charges and, in its discretion, may reinstate a member of the force after he has filed such written application therefor.

Any member of such department found guilty upon charges, after five days' notice and an opportunity to be heard in his defense, of neglect or dereliction in the performance of official duty, or of an act of delinquency seriously affecting his general character or fitness for office, may be punished by the town board having jurisdiction, by reprimand, by forfeiture and withholding of salary or compensation for a specified time not exceeding twenty days, by extra tours or hours of duty during a specified period not exceeding twenty days, by suspension from duty for a specified time not exceeding twenty days and the withholding of salary or compensation during such suspension or by dismissal from the department. Such board shall have the power to suspend, without pay, pending the trial of charges, any member of such police department. If any member of such police department so suspended shall not be convicted of the charges so preferred, he shall be entitled

3

to full pay from the date of suspension. The conviction of a member of such police department by the town board shall be subject to review by certiorari to the supreme court in the judicial district in which such town is located, provided that application therefor be made within thirty days from the determination of such conviction by the town board.

Section 8. Effect of resignation. Any member of such department who shall resign shall not be reinstated by such board unless he shall make written application, within twelve months of his resignation, for reappointment as a member of such department.

Section 9. Absentee leave. Every member of such police department shall be entitled, in addition to any vacation or absentee leave now prescribed by law, to one day of rest in seven. The chief or acting chief of the police department shall keep a time book showing the name and shield number of each member of the department and the hours worked by each of such policemen in each day. The town board may make a variation from the above prescribed hours of vacation, provided the member shall receive during each year the actual number of days absentee leave to which he is entitled. The town board, at its option, may, in addition to the days of rest hereinbefore provided, grant an annual vacation with pay. Whenever the town board shall designate any policeman to attend police school, such attendance shall be deemed in the course of duty and when so attending he shall receive his usual pay and reimbursement for actual and necessary expenses. Sick leave with full pay may be granted whenever such sickness or disability has been incurred without the delinquency of the policeman.

Section 10. Special policemen. The town board of any such town, whether there be a police department in and for such town or not, may employ temporary police officers from time to time as the town board may determine their services necessary. Such police officers shall be known as "special policemen" and shall have all the power and authority conferred upon constables by the general laws of the state and such additional powers, not inconsistent with law, as shall be conferred upon them by the town board. They shall be subject to the general authority and direction of the town board and to such orders and regulations as the town board may prescribe, not inconsistent with law. Such special policemen shall serve at the pleasure of the town board and the town board shall fix their compensation and may purchase uniforms and equipment therefor but no such special policemen shall be appointed nor any expense incurred by reason thereof unless said town board shall have provided therefor in its annual budget, previously adopted, and no expenditure shall be made in excess of the budget appropriation therefor. Such special police shall not be eligible to appointment unless they shall have passed an examination held by the state civil service commission, and unless their names shall be on the eligible list of the said commission at the time of their appointment, and unless such special policeman possess the qualifications set forth in section three of this act.

Section 11. Vacations. Every member of such police department shall be allowed an annual vacation of not less than fourteen consecutive days without diminution of salary or compensation as fixed by or pursuant to law, except in case of public emergency. In the event of a public emergency during which the vacation or portion of a vacation of a member shall have been withheld upon the cessation of such emergency, such member shall then receive with pay the number of days of such vacation withheld.

Section 12. Grades of policemen. The annual salary and compensation of the members of such police department shall be uniform in accordance with their rank and grade except as provided by section thirteen

4

of this chapter and a copy of such salary scale and any changes made therein shall be filed with the state civil service commission. All patrolmen who shall have served four years or upwards on such police force shall be patrolmen of the first grade. All patrolman who shall have served for less than four years and more than three years shall be patrolmen of the second grade. All patrolmen who shall have served for less than three years and more than two years shall be patrolmen of the third grade. All patrolmen who shall have served for less than two years and more than one year shall be patrolmen of the fourth grade. All patrolmen who shall have served for less than one year shall be patrolman of the fifth grade. Whenever any patrolmen of the fifth grade shall have served therein for one year, he shall be advanced to the fourth grade and whenever any patrolman of the fourth grade shall have served therein for one year, he shall be advanced to the third grade and whenever any patrolman of the third grade shall have served therein for one year, he shall be advanced to the second grade and whenever any patrolman of the second grade shall have served therein for one year, he shall be advanced to the first grade. (as amended 1946)

Section 13. Detective service. The chief of police after consent and approval of the town board and board of police commissioners, if any, may from time to time, detail to detective duty as many members of the force as he may deem necessary to make the service efficient and he may at any time revoke such detail. Any policeman who may be so assigned by the chief of police to detective duty may be paid a salary in excess of that paid a member of his rank and grade. Any policeman detailed to detective duty, while so detailed, shall retain his rank and shall be eligible for promotion, the same as if serving in the uniformed force and the time during which he serves in detective duty shall be counted for all purposes as if served in his rank or grade in the uniformed force. (added 1946)

Section 14. Reservation. Nothing in this chapter contained shall deprive any person or persons of any of the benefits of any other provisions of law unless the same shall be inconsistent with the provisions of this chapter, and no other provision of law which may be inconsistent shall prevent the operation of the provisions of this chapter. (added 1946)

Exhibit C



# TOWN OF CLARKSTOWN POLICE DEPARTMENT

| GENERAL ORDER | SUBJECT | EFFECTIVE DATE |
|---|---|---|
| 110 | Organization of Department | 01/31/91 |

| RESCINDS | AMENDS | CROSS REFERENCE | PAGE |
|---|---|---|---|
| | | | 1 of 2 |

I. ORGANIZATION OF DEPARTMENT

    A. The Police Department and its Police Force have the power and it is their duty to:

        1. protect life and property;

        2. prevent crime;

        3. detect and arrest offenders;

        4. preserve the public peace;

        5. enforce all laws and ordinances over which the Police Department has jurisdiction; and

        6. regulate traffic.

II. CHIEF OF POLICE

    A. The Chief of Police shall be appointed by the Town Board in accordance with the applicable laws related thereto, to exercise command of the Police Department and its members.

        1. The Chief of Police is the chief executive officer of the Police Department subject to the Rules and Regulations prescribed by the Police Commission. The

government and control of the Police Department and its members is vested in the Chief of Police.

B.  During the temporary absence or disability of the Chief of Police, when no special designation is made by the Chief or other competent authority, the command automatically devolves upon the senior ranking member of the command. He shall possess all the powers and perform all the duties of the Chief of Police, except the power of making any changes in the Rules and Regulations, appointments, promotions, or changes of assignment or detail. He shall carry out the orders previously given, and such orders shall not, except in cases of extreme emergency, be countermanded nor set aside; however, when such action is taken, a report shall be made to the Chief of Police in writing stating the reasons therefore in such instances.

III. The order of rank in the Police Department will be:

A.  Chief;

B.  Captain;

C.  Lieutenant;

D.  Sergeant;

E.  Patrolman.

IV.  Seniority is determined:

A.  First-by rank;

B.  Second-by continuous service in rank;

C.  Third-by date of appointment to previous rank or ranks;

D.  Fourth-by date of appointment to the Department;

E.  Fifth-by highest score on civil service list from which appointments were made.

*** C.P.D. ***

Exhibit D



# TOWN OF CLARKSTOWN
## OFFICE OF THE SUPERVISOR
### INTER-OFFICE MEMORANDUM

**DATE:**    July 1, 2016

**TO:**      Chief Michael Sullivan, CPD

**FROM:**    George Hoehmann, Supervisor, on behalf of the Board of
             Police Commissioners

**RE:**      Sergeant Cole-Hatchard Reassignment

Chief:

Thank you for meeting with the Town Board this week on short notice to discuss this important matter. It is our understanding that you conducted the interview with Sergeant Cole-Hatchard and that you are awaiting additional information before preparing a report on this matter.

You have confirmed that Sgt. Cole-Hatchard is currently assigned to a particularly sensitive position as the Director of the Rockland County Strategic Intelligence Unit with broad access to confidential information. While it would be inappropriate at this time for the Board to receive detailed information regarding the investigation based upon the possibility of disciplinary proceedings, it is our understanding that Sergeant Cole-Hatchard admitted that he sent the email in question to a reporter in response to an inquiry regarding Officer Picott's status. Your investigation may or may not result in formal disciplinary charges against the Sergeant depending on numerous factors to be determined. It is, however, clear that there was an email exchange and a suggestion that the Sergeant and the Reporter would have further dialogue over Officer Picott's status.

This is a grave concern given the sensitive nature of the Unit and undermines our confidence in the same.

After separate consultation with other members of the Town Board who, as you know, serve as the Board of Police Commissioners, it is our position that there is substantial risk to the Town and the Department in leaving Sergeant Cole-Hatchard in his current position.

Irrespective of the outcome of your investigation and whether disciplinary action is taken as a result of that investigation, his immediate reassignment today out of the Intelligence Unit to other duties appropriate to his status and rank as a detective sergeant within 20 Maple Avenue is necessary and directed.

Further, given the Board of Police Commissioners concern over a potential breach that may have occurred, Sergeant Cole-Hatchard is not to have any duties that place him in contact with members of the press and media, either direct or indirect.

Please confirm today, in writing to the Town Board, that this has occurred.

If you have any questions regarding this please contact me.

cc: Town Board
      Hon. Frank Borelli, Councilman
      Hon. Stephanie Hausner, Councilwoman
      Hon. John Noto, Councilman
      Hon. Adrienne Carey, Councilwoman
    Lino Sciarretta, Town Attorney
    Vincent Toomey, Deputy Town Attorney

Exhibit E

 **Town of Clarkstown**

Michael Sullivan <m.sullivan@clarkstown.org>

## Sgt. Cole-Hatchard
1 message

**Michael Sullivan** <m.sullivan@clarkstown.org>                    Wed, Jul 6, 2016 at 11:53 AM
To: George Hoehmann <g.hoehmann@clarkstown.org>, Frank Borelli <f.borelli@clarkstown.org>, Stephanie Hausner <s.hausner@clarkstown.org>, John Noto <j.noto@clarkstown.org>, Adrienne Carey <a.carey@clarkstown.org>, Lino Sciarretta <l.sciarretta@clarkstown.org>, Vincent Toomey <vtoomey@vtlawoffice.com>

As I reported to you on Monday, July 4, 2016, Sergeant Cole-Hatchard has been removed from the Strategic Intelligence Unit Pursuant to the Board's directive.

I am again requesting any information that the Town Board, or any individual Board members, may have concerning Sergeant Cole-Hatchard's possible misconduct in furtherance of the completion of my investigation. As soon as possible, please provide to me any information in your possession, including copies of any email(s), recordings or other communications exchanged by or with Sergeant Cole-Hatchard, so that I can determine, as Chief of Police, if departmental charges should be properly preferred against Sergeant Cole-Hatchard, or any other corrective action needs to be taken.

Exhibit F

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims ("Agreement") by and between Michael Sullivan (hereinafter "Sullivan") and the Town of Clarkstown (hereinafter the "Town") is dated this 19st day of July, 2016.

WHEREAS, Sullivan is employed by the Town as the Chief of Police; and

WHEREAS, certain differences have arisen between the Town and Sullivan; and

WHEREAS, Sullivan has indicated his intention to retire from the Town's employ, effective December 31, 2016; and

WHEREAS, the Town and Sullivan wish to set forth the terms of his separation from the Town's employ to avoid any dispute or disagreement over his separation from the Town's employment.

NOW, THEREFORE, in exchange for the consideration described herein, the sufficiency of which is hereby acknowledged by the parties hereto, it is stipulated and agreed as follows:

1. Sullivan agrees to submit an irrevocable letter of resignation to the Town and to resign from the Town's employ, effective December 31, 2016. He will submit that letter no later than July 22, 2016 and if required to do so will submit another letter on a date determined by the Town prior to December 31, 2016.

2. During the period between July 22, 2016 and December 31, 2016 Sullivan will be maintained on the Town's payroll and shall receive his existing salary and benefits. He will not, however, be required to perform any services or report to duty and shall exercise no authority on behalf of the Town but shall be available to consult with the Town during that period as determined by the Town. Effective January 1, 2017 Sullivan shall be treated as a retiree having left the Town in good standing and shall be eligible to continue such insurance benefits as are generally available to retiring Clarkstown Police Officers. Sullivan shall also be eligible for the payment of accumulated leave time to the extent available under his employment contract or based upon Town policy and practice for Police Department personnel.

3. Any requests regarding Sullivan's employment with the Town shall be directed to the Personnel Director, Human Resources Department ("Department"). The Department shall respond to such a request by providing only the dates of Sullivan's employment, his last salary and his title and that he retired in good standing, except as may be otherwise required by law or legal process.

4. Sullivan and the Town agree not to publicly disparage or make unfavorable comments, either directly or indirectly, regarding the each other, the Town's employees, its officials, both elected and appointed, its Board members, its

representatives and/or its agents to any third party, except that Sullivan and the Town may make truthful statements and disclosures as are required by law or legal process. In the event that Sullivan or the Town are legally compelled to make any such statement, they shall notify each other of their intent to make any such statement promptly.

5.  The Town's provision of the payments pursuant to paragraph two (2) of this Agreement is contingent upon Sullivan's compliance with the terms of this Agreement, as set forth, including but not limited to paragraph seven (7) below.

6.  In the event either party to this Agreement believes that the other party has breached the Agreement, the party claiming that a breach has occurred will notify the other party in writing of the nature of the breach. Upon receipt of that notice that party shall have five (5) business days to cure or correct the breach. The parties to this Agreement acknowledge that the Supreme Court of Rockland County, State of New York, is the appropriate court to interpret and enforce this Agreement.

7.  In exchange for sufficient consideration, including the lump sum payments recited herein, Sullivan hereby fully, forever, irrevocably and unconditionally releases the Town, its departments, its Town Board members, its officials, employees, agents and representatives (collectively Releasees, hereinafter collectively referred to as "the Town") from any and all claims, controversies, liabilities, complaints, petitions, demands, causes of action, debts, obligations, promises, acts, agreements, attorney fees, indemnification, orders, memoranda, judgments, arbitrations and damages of whatever kind or nature, at law or in equity, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, liquidated or contingent, actual or potential, jointly or individually, that he has had or now has against the Town. Without limiting the generality of the foregoing, this general release includes, but is not limited to: all claims based on any aspect of Sullivan's employment with the Town, his separation/resignation from its employment, and his compensation and/or benefits associated with his employment by the Town; all claims arising under the federal or any state constitutions; all claims arising under any federal, state or local law (statutory or decisional), regulation or ordinance, including but not limited to 42 U.S.C. §§ 1983-1988, the Age Discrimination in Employment Act of 1967, as amended, the Older Workers Benefits Protection Act of 1990, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Equal Pay Act, as amended, the Americans With Disabilities Act, as amended, the Employees Retirement Income Security Act ("ERISA"), the Occupational Safety and Health Act, the New York State Human Rights Law, the New York State General Municipal Law, the New York State Public Officers Law, Article 78 of the New York State Civil Practice Law and Rules, all claims for non-payment or untimely payment of any benefit, wages, reimbursement or other compensation or perquisite related to his employment with the Town, including but not limited to any accrued wages, vacation pay, severance pay, health insurance and any other

benefit; all claims for breach of express or implied contract, whether written or oral, or the covenant of good faith and fair dealing (whether oral or written); all claims for civil rights violations, retaliation or violation of public policy, breach of promise, or detrimental reliance, whether based on constitution, statute, common law or otherwise; all tort claims, including but not limited to negligence, intentional infliction of emotional distress, defamation, wrongful termination, invasion of privacy, breach of personal privacy, or interference with contractual or advantageous relationship; all claims for emotional distress, mental anguish, personal injury, attorney's fees, or costs; all claims for aiding, abetting, inciting, compelling, coercing and/or conspiring to cause any unlawful discrimination or other act; and any and all claims that may be asserted on Sullivan's behalf by others (collectively "Claims"). This release does not preclude Sullivan from seeking to obtain any benefits or enforcing any rights to which he may be entitled under the terms of this Agreement.

8. Notwithstanding any applicable law, and for the purpose of implementing a full and complete release and discharge of the Town, the parties expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all Claims which Sullivan does not know of or suspect to exist in his favor at the time of signing this Agreement, and that this Agreement contemplates the release of any and all such Claim or Claims.

9. If Sullivan initiates or participates in any legal action in violation of this Agreement, the Town may cancel and/or reclaim any amounts paid in respect to his separation/resignation from employment and or cease paying or continuing any other benefits, without waiving any release of Claims granted herein.

10. To the extent permitted by New York State and local law, the Town Code and/or any other applicable law or regulation, the Town agrees to defend and indemnify Sullivan from any and all claims or liabilities of any type resulting from actions taken on behalf of the Town in the scope of his employment and in his capacity as the Chief of Police provided that Sullivan otherwise complies with any requirements set forth by those provisions of law or Town Code.

11. This Agreement is intended to comply with the Older Workers Benefits Protection Act of 1990 ("OWBPA") with regard to Sullivan's waiver of rights under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"). Pursuant to this Agreement, Sullivan understands and agrees that he is specifically waiving rights and claims under the ADEA and to any waiting or rescission period or rights otherwise available under OWBPA. Sullivan acknowledges and agrees that, pursuant to this Agreement, he is receiving consideration in addition to what he would otherwise be entitled to receive; that he has read and understands each of the provisions of this Agreement; that he has been advised to consult with an attorney or other representative of his choosing and has done so before signing this Agreement and that he is entering into this Agreement knowingly and of his own free will.

12. Sullivan agrees that he will keep the existence and terms of this Agreement in the strictest confidence and shall not disclose either the existence or terms of the Agreement to any third party, without the prior written consent of the Town, except to a member of his immediate family, his attorney, his financial and/or tax advisor or as required by law or legal process.

13. This Agreement contains the entire understanding and agreement between the Town and Sullivan with respect to the matters contained herein and it supersedes and cancels all prior negotiations, agreements, commitments, communications, and understandings, written or oral, between the Town and Sullivan.

14. The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties hereto. Should any of the provisions of this Agreement be declared or be determined to be illegal or invalid, in whole or in part, such determination shall have no effect upon and shall not impair the validity or enforceability of any other provision or part thereof, and all remaining provisions and parts thereof shall be valid.

15. This Agreement shall be binding on Sullivan and the Town and on all of their respective affiliates, successors, heirs and assigns and may not be released, discharged, abandoned, supplemented, amended, changed or modified in any manner, orally or otherwise, except by an instrument in writing of concurrent or subsequent date signed by a duly authorized representative of each of the parties hereto.

16. This Agreement shall be controlled by and construed in accordance with the laws of the State of New York applicable to contracts made and to be entirely performed therein.

17. This Agreement may be executed in separate counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument.

18. A signed facsimile copy of this Agreement shall be deemed an original.


SULLIVAN AND THE TOWN ACKNOWLEDGE AND AGREE THAT THIS
AGREEMENT IS A FULL AND FINAL BAR TO ANY AND ALL CLAIM(S) OF
ANY TYPE THAT SULLIVAN MAY NOW HAVE AGAINST THE TOWN.
SULLIVAN AND THE TOWN FURTHER ACKNOWLEDGE THAT THEY HAVE

READ THIS AGREEMENT IN ITS ENTIRETY, THAT THEY UNDERSTAND ALL OF ITS TERMS, AND THAT THEY KNOWINGLY AND VOLUNTARILY ASSENT TO ALL OF THE TERMS AND CONDITIONS CONTAINED IN THIS AGREEMENT.

Agreed to for the Town by:

Agreed to by:

_____

_____
Michael Sullivan

Dated; _____

Dated: _____

Exhibit G

# Clarkstown police chief 'dismayed' at suspension

Christopher J. Eberhart and Steve Lieberman, elieberm@lohud.com    3:27 p.m. EDT July 23, 2016

*Sullivan said he was "surprised" and "dismayed" at the town board's decision*



(Photo: Peter Carr/The Journal News)

CLARKSTOWN - In his first public comments since being suspended, Police Chief Michael Sullivan said in a statement released Friday that he was "surprised" and "dismayed" at the Town Board's decision.

"(The board's accusations) will become public when I file my formal response, so that there can be no doubt that the board's charges are completely without merit," Sullivan said in a statement. "Please be assured that there is no evidence of any wrongdoing on my part or of any conduct unbecoming an officer. I have done nothing that would reflect badly on the good reputation I have earned during my 33-year career in law enforcement."

"What I have done, and what I have always done, is to act in the best interests of the Town of Clarkstown and to make sure that my conduct will never undermine your confidence in myself and the men and women of the Clarkstown Police Department," he said.

SUSPENSION: Clarkstown suspends police chief (/story/news/local/rockland/clarkstown/2016/07/20/breaking-clarkstown-police-chief-suspended-no-reason-announced/87356950/)

RELATED: Clarkstown chief, supervisor spar over police study (/story/news/local/rockland/clarkstown/2016/04/08/clarkstown-chief-supervisor-spar-over-police-study/82791518/)

FEDERAL SUIT: Clarkstown sergeant files civil rights lawsuit (/story/news/local/rockland/clarkstown/2016/07/22/clarkstown-sergeant-sues/87456536/)

The town has 35 days from Wednesday, the date of Sullivan's suspension, to appoint a hearing officer to take evidence and render a recommendation to the Town Board. If the hearing officer determines a punishment is called for, the recommendation can range from suspension to dismissal.

The process could take months, during which Sullivan will continue to receive his salary and benefits. Sullivan's annual salary is $278,161 for running the county's largest police department, with 162 officers and 24 civilian employees. Since his suspension, Sullivan, who joined the force in 1987 and has been chief since 2011, has received words of support from officers in nearby police departments.

Spring Valley Police Chief Paul Modica, the Rockland Police Chiefs Association president, said he found Sullivan's suspension "troubling" and hoped the decision was not political, noting the contentious relationship Sullivan has had with Supervisor George Hoehmann since he took office in January.

"Chief Sullivan is a man of integrity," Modica said. "He's always going to do the right thing. Some people don't like it when you say, 'No.'"

HAVERSTRAW: Police release photos of Chase Bank robber (/story/news/crime/2016/07/22/bank-robbery-photos-haverstraw/87436504/)

WESLEY HILLS: Proposed cellular antennae cause stir (/story/news/local/rockland/2016/07/22/cell-antennae-crown-casle-rockland/87354440/)

ROCKLAND: Backyard chicken Facebook group offers feed for enthusiasts (/story/news/local/rockland/2016/07/22/backyard-chickens-facebook-group-rockland/87098060/)

Hoehmann has declined to discuss Sullivan's suspension. His chief of staff, Vincent Balascio, said the Republican-controlled Town Board decided to suspend Sullivan, but cannot disclose the charges or comment.

"Following a unanimous decision by the Town Board, Chief Michael Sullivan has been suspended," Balascio said in a statement released Thursday. "While the Town cannot comment on ongoing investigations and personnel matters, we take disciplinary matters very seriously."

Saturday, Councilwoman Stephanie Hausner, the sole Democrat on the board, said in a statement that the decision could not have been unanimous because she was absent from the meeting the night the vote to remove Sullivan took place.

"My colleagues had advance notice that I would be absent," Hausner said in the statement. "I did not participate in any vote and had told the town attorney and the supervisor that I was not prepared to vote on the suspension of the police chief without seeing any formal charges."

Hoehmann, a councilman before being elected supervisor in November, and Sullivan have been at odds over department policies and decisions. At one point, Hoehmann prohibited Sullivan from talking to the media.

Sullivan also publicly questioned the Town Board's decision to hire the upstate accounting firm of Bonadio Group (/story/news/local/rockland/clarkstown/2016/04/08/clarkstown-chief-supervisor-spar-over-police-study/82791516/) to study his $50 million department with an eye toward making financial savings. He said the upstate accounting firm lacked experience. The department makes up a hefty 34 percent of the town's budget. Average pay, which includes salary and overtime, was $166,719 a year for uniformed officers in 2015, according to the Empire Center for New York State Policy.

*Staff writer Dan Reiner contributed to this report.*

Read or Share this story: http://lohud.us/2a6L2Wu

AdChoices

THE 2016 NISSAN
ROGUE®

$178 PER MONTH LEASE*
36 Months, $2,609 Initial Payment, Excl. taxes, title and license

As shown 2016 Rogue SL AWD with Premium Package $345 per month lease.          *More Lease Information

Get your first year for as low as $9.99

UNLOCK MY OFFER (HTTP://OFFERS.LOHUD.COM/SPECIALOFFER?GPS-SOURCE=BEAGILAUGUST&UTM_MEDIUM=OVERLAY&UTM_SOURCE=BOUNCE-EXCHANGE&UTM_CAMPAIGN=AUGUST&UTM_CONTENT=AGILITYZONE)

Exhibit H

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN COLE-HATCHARD,<br><br>　　　　　　　　*Plaintiff,*<br><br>　　-vs-<br><br>GEORGE HOEHMANN, as Supervisor for the Town of Clarkstown, New York and in his individual Capacity; FRANK BORELLI, as Councilman and Deputy Supervisor for the Town of Clarkstown, New York and in his individual capacity; STEPHANIE HAUSNER, as Councilwoman for the Town of Clarkstown, New York and in her individual capacity; JOHN J. NOTO, as Councilman for the Town of Clarkstown, New York and in his individual capacity; ADRIENNE D. CAREY, as Councilwoman for the Town of Clarkstown, New York and in her individual capacity; TOWN OF CLARKSTOWN, NEW YORK; and TOWN BOARD OF THE TOWN CLARKSTOWN, NEW YORK;<br><br>　　　　　　　　*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>　　**CIVIL ACTION NO.**<br><br>　　———————————<br><br>　　**JURY TRIAL DEMANDED** |

STEPHEN COLE-HATCHARD, Plaintiff, by his Attorneys, as and for his Complaint

against the Defendants, respectfully states, on information and belief, as follows:

1

## NATURE OF ACTION:

1.      STEPHEN COLE-HATCHARD brings this action under Title 42 U.S.C. § 1983 and Title 28 U.S.C. §§ 2201 and 2202 to obtain relief that will vindicate his exercise of federally guaranteed civil rights.

2.      By this action, COLE-HATCHARD seeks redress for retaliatory actions taken by his employer, the TOWN OF CLARKSTOWN, Defendant. That retaliation has and is threatened to continue and increase to punish COLE-HATCHARD because of his exercise of rights of freedom of speech in his capacity as a private citizen addressing matters of great public concern.

3.      Since 2014, COLE-HATCHARD, a police sergeant employed by the TOWN OF CLARKSTOWN Police Department, has worked on a task force operated jointly by the TOWN OF CLARKSTOWN and Rockland County, New York under the auspices of the District Attorney of Rockland County. Until the current controversy arose, COLE-HATCHARD served as the Special Intelligence Sergeant for the Police Department and Director of the Rockland County Strategic Intelligence Unit, a critical position involving public safety. In retaliation for the exercise of federal constitutional rights, as explained more fully within, COLE-HATCHARD will be permanently removed from his positions as the Special Intelligence Sergeant and the Director of the Special Intelligence Unit. When the retaliation began, COLE-HATCHARD was stripped of those positions and assigned to headquarters duty.

4.      The retaliatory actions of the TOWN OF CLARKSTOWN, GEORGE HOEHMANN, and the TOWN BOARD OF CLARKSTOWN acting as the POLICE COMMISSION OF THE TOWN OF CLARKSTOWN have already irreparably injured COLE-HATCHARD by removing him from the afore-mentioned positions.

2

5.     As set out more fully within, the specific basis for retaliation against COLE-HATCHARD is founded on COLE-HATCHARD's communications with STEVEN LIEBERMAN, a local news reporter, and with particular respect to COLE-HATCHARD's observations and comments about the reporter's own journalism and research into a campaign donation that benefitted GEORGE HOEHMANN, the TOWN OF CLARKSTOWN Supervisor, in his pursuit of that office in November 2015 in an amount of no less than $96,000.

6.     When GEORGE HOEHMANN and the TOWN BOARD OF CLARKSTOWN concluded that COLE-HATCHARD's speech would not be supportive of their political goals, but would truthfully state matters of public record, the TOWN OF CLARKSTOWN, GEORGE HOEHMANN, and the TOWN BOARD OF CLARKSTOWN in its capacity as the POLICE COMMISSION OF THE TOWN OF CLARKSTOWN took retaliatory, adverse employment action against COLE-HATCHARD.

7.     The Defendants' actions, taken under color of state law, and with knowledge and intent, have already deprived COLE-HATCHARD of his constitutional rights to freedoms of speech, association, and to equal protection under the law, and are threatened to continue to do so unless restrained by ORDER of this Court.

8.     Because the actions of Defendants expressly restrict COLE-HATCHARD's free speech, those actions should be declared unconstitutional, and the TOWN OF CLARKSTOWN, the TOWN BOARD OF CLARKSTOWN and GEORGE HOEHMANN should be enjoined permanently from so violating COLE-HATCHARD's constitutional rights.

9.     GEORGE HOEHMANN, the TOWN BOARD OF CLARKSTOWN and the TOWN OF CLARKSTOWN acted under color of state law, depriving COLE-HATCHARD of rights, privileges, and immunities guaranteed by the United States Constitution and federal law,

3

and these Defendants should be ordered to make COLE-HATCHARD whole for the wrongs they have inflicted already and that they continue to inflict on him.

## JURISDICTION AND VENUE

10.    All Parties herein reside in, or have a place of business in, the Southern District of New York.

11.    The acts complained of herein occurred in the County of Rockland New York and in the Southern District of New York.

12.    This Court has original jurisdiction over COLE-HATCHARD's action pursuant to United States Constitution, particularly the First, Fourth, Fifth, and Fourteenth Amendments thereto, and pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. § 1343, Title 42 U.S.C. § 1983, and Title 42 U.S.C. § 1988.

13.    This Court has jurisdiction over COLE-HATCHARD's request for declaratory relief pursuant to Title 28 U.S.C. §§ 2201 and 2202.

14.    Venue in this District is proper pursuant to Title 28 U.S.C. § 1391(b), because the acts and transactions complained of occurred in, and continue to occur in, this District.

## THE PARTIES

## THE PLAINTIFF

15.    STEPHEN COLE-HATCHARD, the Plaintiff, is a resident of the County of Rockland within the State of New York.

## THE DEFENDANTS

16.    The TOWN OF CLARKSTOWN is a duly constituted New York municipal corporation within the County of Rockland, New York. The TOWN OF CLARKSTOWN has

4

jurisdiction over all Town roads and highways within, and all police and other municipal affairs within, the geographical confines of the Town of Clarkstown.

17.    The TOWN BOARD OF CLARKSTOWN governs the Town of Clarkstown. Ostensibly, the TOWN BOARD OF CLARKSTOWN also serves as the POLICE COMMISSION OF THE TOWN OF CLARKSTOWN.

18.    GEORGE HOEHMANN is the duly elected Supervisor for the TOWN OF CLARKSTOWN. HOEHMANN is sued in his official and individual capacity.

19.    FRANK BORELLI is a duly elected member of the TOWN BOARD OF CLARKSTOWN, and also serves as the Deputy Supervisor for the Town of Clarkstown. BORELLI is sued in his official and individual capacity.

20.    STEPHANIE HAUSNER is a duly elected member of the TOWN BOARD OF CLARKSTOWN. HAUSNER is sued in her official and individual capacity.

21.    JOHN J. NOTO is a duly elected member of the TOWN BOARD OF CLARKSTOWN. NOTO is sued in his official and individual capacity.

22.    ADRIENNE D. CAREY is a duly appointed member of the TOWN BOARD OF CLARKSTOWN. CAREY is sued in her official and individual capacity.

## SIGNIFICANT NONPARTY PERSONS

23.    At all times relevant to this Verified Complaint until July 21, 2016, MICHAEL SULLIVAN was the Chief of Police of the TOWN OF CLARKSTOWN's Police Department. CHIEF SULLIVAN, a Law Enforcement Officer for over 32 years, started his career as a New York City Police Officer, joining the Clarkstown Police Department in 1987. He was promoted to Sergeant in 1995, Lieutenant in 2000, Captain in 2009 and Chief of Police in 2011.

5

24. "OFFICER T" is a former Clarkstown Police Officer separated from service in August 2015, who, on information and belief, donated over $218,000 to certain political campaigns in 2015, including no less than $96,000 to GEORGE HOEHMANN's campaign, in return for a promise by HOEHMANN to reinstate OFFICER T to his position with the Clarkstown Police Department.

25. THE BONADIO GROUP is a CPA and Consulting Firm operating out of Pittsford, New York, whose Managing Partner is Tom Bonadio. The Bonadio Group has been retained by the TOWN OF CLARKSTOWN to conduct an efficiency study of the Police Department of the TOWN OF CLARKSTOWN.

26. STEVEN LIEBERMAN is an award winning, outstanding, and well-recognized newspaper reporter covering police, courts, politics, and related topics in the Lower Hudson Valley; LIEBERMAN investigated campaign finance and donations and provided reporting about them for the Rockland County Journal News newspaper.

## ALLEGATIONS OF FACT

### COLE-HATCHARD GENERAL BACKGROUND AND EMPLOYMENT

27. COLE-HATCHARD has been a law enforcement officer for over 37 years, including over 32 years of service with the Town of Clarkstown Police Department and currently holds the rank of Sergeant.

28. COLE-HATCHARD is a registered member of the Democratic Party in Rockland County.

29. COLE-HATCHARD is not of the same Political Party as any of the Defendants, save one.

30. COLE-HATCHARD is a licensed member of the Bar of the State of New York.

6

31.     COLE-HATCHARD has held elected office in New York, serving as a member of the Town Board of the Town of Stony Point and as a member of the School Board for the North Rockland Central School District.

32.     COLE-HATCHARD has also served as Town Attorney for the Town of Stony Point.

33.     COLE-HATCHARD has been involved for many years in combating and disclosing public corruption; in pursuit of that goal, COLE-HATCHARD has held numerous public positions, including the elected positions previously mentioned.

## COLE-HATCHARD'S DUTIES AS SPECIAL INTELLIGENCE SERGEANT AND DIRECTOR OF THE SPECIAL INTELLIGENCE UNIT

34.     Throughout his career, COLE-HATCHARD has served in extremely confidential and sensitive positions, including his previous service as a Special Agent with the United States Secret Service, and his current position as Director of the Rockland County Strategic Intelligence Unit ("SIU").

35.     Because of his outstanding personal and professional qualities for integrity and respect for the law, COLE-HATCHARD was selected, from the almost 200 sworn officers comprising the Clarkstown Police Department and the Rockland County District Attorney's Detective Division, to be the Director of the newly created SIU, charged with the task of developing a business plan, and executing that plan from start up to operation.

36.     COLE-HATCHARD's assigned tasks included creating policies, building the Unit's infrastructure, hiring crime analysts, and developing intelligence capabilities and relationships nationwide.

37.     COLE-HATCHARD successfully completed the development and launch of the Intelligence Unit, and until the improper and illegal actions described herein by the Defendants,

7

supervised the development and distribution of criminal and counter-terrorist intelligence for Rockland County on a National level.

38.     Numerous local, State and Federal law enforcement agencies know and work with COLE-HATCHARD.

39.     COLE-HATCHARD is a valued partner with those local, State, and Federal law enforcement agencies, trusted by them to be a primary point of contact for criminal intelligence purposes.

40.     The general public and law enforcement communities hold COLE-HATCHARD in high regard as an honest, trustworthy and hard-working citizen and law enforcement officer.

41.     COLE-HATCHARD enjoys a particularly positive reputation in the law enforcement community for confidentiality and incorruptibility.

42.     The SIU prepares criminal intelligence work product for numerous local, State, and Federal agencies for the protection of National security, as well as for regional and local counter-terrorist and criminal investigative purposes and is highly confidential law enforcement data.

43.     The TOWN OF CLARKSTOWN Police Department has featured the work and importance of the Special Intelligence Unit in both its 2014 and 2015 Annual Reports.

44.     One primary purpose of the SIU is to develop criminal intelligence regarding persons and groups reasonably believed to be planning, supporting or engaging in terrorist activities including mass shootings, attacks on critical infrastructure, and other acts potentially jeopardizing National and regional security.

45.     The SIU also develops intelligence about criminal activity in the Town of Clarkstown, the County of Rockland, and other areas as requested by partner agencies.

8

46.    Another main purpose of the SIU is to lead the transition of the Clarkstown
Police Department from a traditional "response oriented" police department to a more advanced
"Intelligence Led Policing" one.

## ADDITIONAL DUTIES AND RESPONSIBILITIES ASSIGNED TO COLE-HATCHARD BY THE CLARKSTOWN POLICE DEPARTMENT

47.    COLE-HATCHARD has also been assigned numerous other tasks as a member
of the Clarkstown Police Department.

48.    After passing the New York Bar Exam, COLE-HATCHARD was assigned the
task of establishing the Department's Legal Division and to carry out those duties pursuant to
Department General Order 815.

49.    In addition, for many years, COLE-HATCHARD has served as part of the Town
of Clarkstown Police Department's Critical Incident Response Team, or "CIRT." The
Clarkstown Police Department's CIRT is one of just a handful of such teams throughout New
York State to have been certified by the New York State Municipal Police Training Council.
COLE-HATCHARD has served as a hostage negotiator for years on the team.

50.    The TOWN OF CLARKSTOWN Police Department has also assigned COLE-
HATCHARD the responsibility of communicating with news media on behalf of the
Department, and the responsibility for addressing many of the requests for information made to
the Police Department pursuant to the New York State Public Officers Law (also known as the
Freedom of Information Law).

51.    In that capacity, COLE-HATCHARD has developed a personal relationship with
newspaper reporters who consider him to be knowledgeable about non-police matters because of
COLE-HATCHARD's previous experiences as an elected official and an attorney, as well as
someone who personally has knowledge of New York campaign contribution laws.

9

52.    COLE-HATCHARD has been performing those duties diligently for over 27
years without issue.

## BACKGROUND ON POLICE DISCIPLINE
## IN THE TOWN OF CLARKSTOWN

53.    As authorized by the Rockland County Police Act, the TOWN BOARD OF
CLARKSTOWN purportedly enacted a resolution designating the TOWN BOARD as the
POLICE COMMISSION for the CLARKSTOWN POLICE DEPARTMENT.

54.    On February 7, 2012, pursuant to the Rockland County Police Act, the TOWN
BOARD OF CLARKSTOWN adopted disciplinary procedures as relating to Police Department
employees.

55.    At that time, HOEHMANN served as a councilman and seconded the motion to
adopt the resolution; HOEHMANN, BORELLI, and HAUSNER were all present, debated the
resolution, and voted in favor of it.

## PRETEXT AND RETALIATION: DISCIPLINING COLE-HATCHARD FOR
## EXPRESSING HIS OPINION ON SUSPECT CAMPAIGN DONATIONS

### THE CASE OF "OFFICER T" SETS THE STAGE:
### TERMINATION AND CAMPAIGN DONATIONS

56.    In August of 2015, after years of litigation, a Clarkstown Police Officer ("Officer
T") was terminated from the Town Police Department.

57.    On information and belief, immediately upon Officer T's termination, he vowed
to have the then-Town Supervisor defeated in the November 2015 election, and have the new
regime remove the Chief of Police "one way or another."

58.    On information and belief, Officer T declared he would have the new Town
Board reinstate him to his police position to qualify for a retirement pension valued at
approximately $3 million, and taxpayer funded medical benefits for the rest of his life.

10